# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 2485 | **DATE** | 4/9/2002 |
| **CASE TITLE** | Syndia Corporation vs. The Gillette Company | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. The motion of defendant-counterplaintiff Gillette for leave to file a second amended answer and counterclaims against LMERF is denied. The motion of involuntary plaintiff LMERF to dismiss the counterclaims against it is granted. Counts I, II, III, IV, V, VI and VII are dismissed insofar as they are directed at LMERF. The court on its own initiative dismisses LMERF as a party plaintiff. To preserve the record, Gillette is given leave to file its "Proposed" Second Amended Complaint and Counterclaim.

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | number of notices |
| ✓ | Notices mailed by judge's staff. | |
| | Notified counsel by telephone. | date docketed |
| | Docketing to mail notices. | |
| | Mail AO 450 form. | docketing deputy initials |
| | Copy to judge/magistrate judge. | |

APR 11 2002

3
number of notices

4/9/2002
date mailed notice

U.S. DISTRICT COURT

02 APR 10 AM 9:59

FILED-ED TO

| MD | courtroom deputy's initials |
|---|---|

Date/time received in central Clerk's Office

MD
mailing deputy initials

Document Number

SYNDIA CORPORATION,                    )
                                       )
    Plaintiff,     )
                                       )
    v.              )    No. 01 C 2485
                                       )
THE GILLETTE COMPANY,                  )
                                       )
    Defendant,      )
                                       )
    and             )
                                       )
THE LEMELSON MEDICAL, EDUCATION &      )
RESEARCH FOUNDATION, L.P.,             )
                                       )
    Involuntary Plaintiff.    )

**DOCKETED**

APR 1 1 2002

## MEMORANDUM OPINION AND ORDER

This case originated as a patent infringement suit brought by plaintiff, Syndia Corporation

("Syndia"), the alleged exclusive licensee of four patents, referred to in this litigation as the '808,

'596, '643, and '941 patents ("the patents in suit"). The accused infringer, the Gillette Company

("Gillette"), has pursued not only the typical responses of non-infringement and invalidity of the

patents, it has interposed nine affirmative defenses and nine counterclaims. Plaintiff Syndia

Corporation ("Syndia") has moved to strike the affirmative defenses and counterclaims against it[1]

and involuntary plaintiff, Lemelson Medical, Education & Research Foundation, L.P. ("LMERF"),

has moved to dismiss all counterclaims against it. On February 13, 2002, this court denied

LMERF's motion to dismiss itself as a Rule 19 plaintiff [#24-1], acknowledging that once the

---

[1]Syndia moves to strike the First (lack of standing), Fifth (¶ 6, unreasonable delay in filing suit), Sixth (estoppel) and Eighth (Gillette is a licensee) affirmative defenses and to dismiss Counts VIII (inducement of breach of contract) and IX (tortious interference with contract).

counterclaims were determined, it might reassess the matter. After some intense motion practice before the designated magistrate judge in which Gillette successfully obtained an unredacted copy of a settlement agreement entered into between Syndia and LMERF in July, 2001, Gillette moved for leave to file a Second Amended Answer and Counterclaim based on that discovery. This decision treats Gillette's motion for leave to file and LMERF's motion to dismiss the counterclaims. Syndia's motion to strike and dismiss (as well as its opposition to the motion for leave to file) remains pending and those issues not perforce resolved by this ruling will be addressed in a forthcoming ruling.

For the reasons stated below, Gillette's motion for leave to file a second amended answer and counterclaim is denied. LMERF's motion to dismiss all counterclaims against it is granted. LMERF will be dismissed as an involuntary plaintiff because its presence is not necessary to disposition of the litigation.

## APPLICABLE STANDARDS

A motion to dismiss a counterclaim is treated the same as a motion to dismiss a complaint. A motion to dismiss challenges the sufficiency of the complaint (here, the counterclaim) for failure to state a claim upon which relief may be granted. *General Elec. Capital Corp.* v. *Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). Dismissal is appropriate only if it appears beyond a doubt that the (counter)plaintiff can prove no facts in support of its claim that would entitle it to relief. *Conley* v. *Gibson*, 355 U.S. 41, 45-46 (1957); *Kennedy* v. *Nat'l Juvenile Det. Assoc.*, 187 F.3d 690, 695 (7th Cir. 1999). In ruling on the motion, the court accepts as true all well pleaded facts alleged in the counter-complaint, and it draws all reasonable inferences from those facts in favor of the plaintiff. *Jackson* v. *E.J. Brach Corp.*, 176 F.3d 971, 977 (7th Cir. 1999).

2

### FACTS[2]

The late Jerome Lemelson was a prolific American inventor with over 500 patents to his credit, which patents and applications cover a wide variety of technologies, from bar coding to computers to medical devices. In the early 1990s, almost all of Mr. Lemelson's patents and pending applications were assigned to LMERF. By the year 2000, LMERF had licensed these patents in various combinations to over 500 companies, generally in the form of a Portfolio License, which as bargained between LMERF and the licensees, explicitly defined the patents included and excluded patents from the scope of these licenses.

In 1994, Mr. Lemelson entered into a joint venture with a Chicago businessman, Roger Hickey, and a Northwestern University engineering professor, James Conley, Ph.D., to develop and exploit synthetic diamond technology based on certain LMERF patents and applications. They named the venture "Syndia" for "synthetic diamond." In or about November 1994, Mr. Hickey, Dr. Conley, Syndia and Mr. Lemelson entered into a contract (the "Management Agreement") that, according to Syndia and LMERF, provided for LMERF's exclusive license of the "Syndia patents" to Syndia. The patents in suit are within the license granted by the Management Agreement.

The Management Agreement between LMERF and Syndia was modified by an April 14, 1995 "Letter Agreement." Among other things, the Letter Agreement recited that Mr. Lemelson, on behalf of LMERF, had "followed a general policy to date of excluding the subject patents from

---

[2]The facts come from the pleadings, including the counterclaim [#103], and exhibits attached to the complaint, amended answer and counterclaim, as well as, where appropriate, the proposed second amended answer and counterclaims (unfiled). Background facts, as needed, are derived from the opinion of Judge James F. Holderman in *Syndia Corp.* v. *LMERF*, No. 99 C 8241, 65 F. Supp. 2d 728 (N.D. Ill. 2001), as well as representations made in the various briefs. The various contract documents attached to the pleadings are treated as incorporated therein. Because of the peculiar history of the disputes among the parties, the court is confident that none of the facts material to this decision are genuinely contested. Nevertheless, LMERF's motion remains a 12(b)(6) motion, not a Rule 56 motion and the court relies on Gillette's pleadings with respect to any apparently disputed fact.

license agreements signed by [LMERF] after the date Syndia came to be licensed under [the licensed] patents." *Id.* The Letter Agreement modified the Management Agreement by providing that, in "exceptional" situations LMERF would have Syndia's permission to license the patents, including the patents in suit. The Letter Agreement set out as background that before the Management Agreement was entered into, Lemelson had granted non-exclusive licenses to perhaps fifty or more licensees "under all or most of my patents including the subject patents . . . ." The letter, as examples, named Mitsubishi Electric, the "Big 3" automakers, and leading conductor and semi-conductor companies, among others, stating, "Thus, Syndia's exclusive rights are subordinate to these prior agreements." The text continued, "Recently, there have arisen several situations, and we contemplate more in the future, where it is simply not possible as a practical matter to reach agreements with certain companies under all or certain prominent portions of my patent portfolio unless I am able to grant covenants not to sue, licenses, etc., under the subject patents as a part of the overall license or settlement with such companies." Mr. Lemelson cited Mitsubishi Electric as an example, stating that the company "does not make any diamond thin film products and has no present plans to do so. However, to avoid the possibility of future conflicts, they insisted on the inclusion of these patents within the scope of the settlement." Again, he pointed out, that in general it was not the desire of the non-exclusive licensees to use the patent but rather to avoid any possibility of litigation. In order to resolve Lemelson's dilemma, the Letter Agreement recites:

> "To permit me and [LMERF] to accommodate these exceptional licensing situations without the necessity of continuing and separate consultations with Syndia, we have agreed that I may license, give covenants not to sue, releases or the like under the subject patents as a part of, and incident to, the licensing of my machine vision, automatic identification or other patent groups in my overall patent portfolio where in my sole discretion I deem such action to be

4

reasonably necessary to consummate the agreements. Of course, I will not license the subject patents alone, but only as incident to a license of my other patent groups and then only as I deem necessary to reasonably accommodate the situation."

On or about May 31, 1999, in order to resolve threatened infringement litigation, LMERF licensed numerous patents to Gillette, pursuant to a "Supplier Agreement.[3]" The patents licensed specifically excepted the patents licensed to Syndia under the Management Agreement (set out on "Schedule A" attached to the Supplier Agreement), among which were the patents in suit. The Supplier Agreement contained, in addition, a corresponding "exception to the exception" clause, which provided that, after the effective date, "in the event and to the extent [LMERF] acquires the right to grant licenses and covenants not to sue as contemplated hereunder, such Schedule A patents shall become included within the scope of this Agreement." In reaching this agreement, Gillette's goal was, like the companies described in the Letter Agreement, never to be sued by the Lemelson entities.[4]

In late 1999, Syndia sued LMERF in this court for breach of Syndia's contract and beneficial rights in the patents under the Management Agreement and the Letter Agreement. *Syndia Corp.* v. *LMERF*, No. 99 C 8241. In a ruling dated February 14, 2001, reported at 65 F. Supp. 2d 728 ("the

---

[3]In the proposed second amended counterclaim, Gillette alleges that LMERF's notice of infringement offered to negotiate a license which would give "freedom from suit under all issued and unexpired Lemelson patents (about 180 patents) and all pending Lemelson patent applications (about 75 applications) for the defined License Fields." ¶ 22.

[4]In the proposed second amended counterclaim, Gillette alleges that while LMERF was negotiating with Gillette, LMERF sent Gillette a document called "Ford option" which excluded the Schedule A Patents and LMERF represented to Gillette that it could have substantially the same terms as the Ford option, suggesting to Gillette that Ford was not to receive a license of the Schedule A patents, but in fact LMERF entered into a side agreement with Ford in which it licensed the patents in suit. LMERF similarly licensed the patents in suit to GM and Chrysler without disclosing it to Gillette. ¶¶ 28, 29.

Holderman decision"), the Honorable James F. Holderman adjudicated the rights of the parties. As important here, the court made the following rulings:

(i)     LMERF had exclusively licensed the Syndia patents to Syndia, and did not have "the right" to license those patents to prospective licensees, save under the situations contemplated by the Letter Agreement. *Id.* at 752.

(ii)    LMERF had not licensed the Syndia patents to Warner-Lambert or Gillette or done anything to impede or interfere with Syndia's right to license those companies (or any of the hundreds of other companies Syndia had been complaining of). *Id.* at 741, 753.

(iii)   LMERF's informational statements to hundreds of prospective licensees, including Gillette that it did not have "the right" to license the Syndia patents, was "perfectly accurate" and consistent with LMERF's contractual and fiduciary obligations to Syndia. *Id.* at 751.

(iv)    Syndia was free to institute infringement litigation against Gillette, and although the Management Agreement required LMERF to consent to litigation, LMERF was bound to exercise its consent rights in a manner that would not defeat the basic purpose of the exclusive license granted therein; in other words, LMERF had to act "reasonably." *Id.* at 746, 748.

(v)     Even if LMERF had purported to license the Syndia patents to Warner-Lambert, Gillette, or others, such licenses would be invalid and ineffective in light of LMERF's prior grant of exclusive rights to Syndia. *Id.* at 753.

(vi)    The "exception to the exception" clause of the Supplier Agreement would only be triggered by a future event (i.e., if LMERF acquired a right to license after the effective date of the Gillette agreement). *Id.* at 749.

The court interpreted the terms of the Supplier Agreement (although Gillette was not a party to the litigation) as follows:

> [T]he third party licensees paid for and obtained a license in all LMERF had to right to give at the time of the agreement, understanding that the Syndia licenses were not LMERF's to give. In addition, the third-party licensees obtained the assurance that they would be free from infringement claims by LMERF if LMERF were to acquire rights in the presently-excluded patents some time in the future. The parties gave that assurance by providing that any future-acquired rights would pass immediately to the third-party licensees.

*Id.* at 750. After the Holderman decision, on July 30, 2001, as part of a global settlement of all their disputes, LMERF quitclaimed its rights, if any, in the Schedule A patents to Syndia.

The pending law suit was filed April 9, 2001, shortly after the Holderman decision was entered. In a set of counterclaims, Gillette claims that LMERF, joined as a necessary party, has damaged plaintiff with respect to the Supplier Agreement. LMERF has moved to dismiss itself from them all.

## A.    The Effect of the Holderman Decision on this Litigation

A threshold issue that will inform the remainder of this opinion is whether Judge Holderman's findings of fact and conclusions of law in the dispute between Syndia and LMERF have an estoppel effect on relitigation here. Relying on general principles of issue preclusion, Gillette contends that because it was not a party to 98 C 8241, it is not bound by the facts or the conclusions reached in the Holderman decision. LMERF responds that Gillette has no standing to challenge the interpretation of a contract to which it was not a party, citing *Briton* v. *Co-Op Banking Group*, 4 F.3d 742, 745 (9th Cir. 1993), *Honeywell* v. *J.P. Maguire Service Co.*, No. 93 CIV. 5253, 2000 WL 307398 (S.D.N.Y, Mar. 23, 2000); and *James* v. *Zurich-American Ins.*, 203 F.3d 250,

256-58 (3rd Cir. 2000). *Briton* stands for the proposition that a non-party has no standing to enforce a contract between others. *See Briton*, 4 F.3d at 746 ("Liebling is not a successor in interest or an assignee for purposes of standing to enforce GD & L's contractual arbitration clause."); *Honeywell* is a lengthy decision addressing numerous issues and cited without a pin cite, but the court on quick perusal does not find therein the principle for which it is cited. *James* is a better fit, although it does not explicitly hold that a non-party has no standing to challenge the interpretation of a contract between others. Rather, *James* determined that where parties to a contract by their course of dealing reflected their mutual intent, a non-party could not use extrinsic evidence surrounding the contract's formation to prove a different intent. Here, by contrast, the intent of the parties to the Management Agreement was in dispute between them, causing Syndia to sue LMERF to resolve the contract's obligations. This difference should not make a difference in the applicability of the *James* principle, *i.e.,* that Gillette as a non-party to the agreement between Syndia and LMERF should not be able to prove a different agreement from that which the Holderman decision resolved. The court has determined for Syndia and LMERF what they agreed to when they entered into the Management Agreement and the Letter Agreement, not based on a mutually agreed course of conduct, but in lieu of the parties' ability to determine the matter for themselves. *See* 165 F. Supp. 2d at 744 ("Given the clear intent of the parties to convey those [licensing] rights, this court deems them to have been given."). Gillette had no vested rights in the Syndia-LMERF agreements (as it even professed when moving to quash discovery against it in that case) just as the non-party in *James* had none. Although *James* is not binding precedent, the impeccable logic of our own Judge Shadur, who authored the opinion in *James*, cannot be easily disregarded, and Gillette has not given the court a reason to do so.

Gillette does argue that this court should revisit the Holderman decision because Judge Holderman in interpreting the Syndia-LMERF agreement relied significantly on stipulations and LMERF's admissions, in making his findings of fact. For example, where LMERF and Syndia stipulated that the license under the Management Agreement was exclusive, Gillette contends that the Letter Agreement "unequivocally establishes" that LMERF had rights in the subject patents at the time Gillette and LMERF entered into the Supplier Agreement.[5] Stipulations and admissions are made so as to narrow the issues for trial. There is no allegation by Gillette that the stipulations and admissions made in 98 C 8241 were for another purpose, such as collusion. The court, therefore, concludes that insofar as the Holderman decision interprets the contract between Syndia and LMERF, and absent an appeal, it is a final determination which Gillette cannot challenge here.[6][7]

With this backdrop, then, the counterclaims against LMERF are addressed in sequence, as follows:

---

[5]During oral argument regarding its motion for leave to file its second amended answer and counterclaims, Gillette also relied on the 2001 Settlement Agreement which, despite the quitclaim, retains LMERF's licensing authority under the Letter Agreement. The Settlement Agreement does not expand any rights LMERF had prior to the Holderman decision. Thus it is essentially irrelevant to the decision now before the court.

[6]This does not apply, however, to the portions of the decision interpreting the Supplier Agreement. Indeed, this is the perfect example of an instance where issue preclusion does not apply. Gillette must have had its day in court before it may be precluded from challenging the interpretation of a contract to which it was a party. See *Kunzelman* v. *Thompson* 799 F.2d 1172, 1177 (7th Cir. 1986) ("Due Process does not permit application of collateral estoppel against a party who did not have a full and fair opportunity to litigate the issue in the earlier proceedings"); *Kraushaar* v. *Flanigan*, 45 F.3d 1040, 1050-512 (7trh Cir. 1995) ("[A]s a matter of due process collateral estoppel can be used to bind only those persons who are parties or who are in privity with parties to the prior proceeding."). The Supplier Agreement, however, is not the roadblock Gillette faces here.

[7]It is unnecessary to consider Syndia's argument in support of its motion to dismiss that Gillette waived its opportunity to relitigate by filing a motion to quash in 98 C 8241 in which it took the position that "[t]he disputed contracts in the Illinois Litigation . . . do not involve the non-party Gillette." In order for judicial estoppel of this type to apply, a party must have taken differing positions in two proceedings. Having won the first time, a party is estopped from taking an opposing position when it later suits it purpose. *See Water Technologies Corp.* v. *Calco.* Ltd. 850 F.2d 660, 665-66 (Fed. Cir. 1988); *Forty-Eight Insulations, Inc.* v. *Aetna Cas. & Sur. Co.*, 162 B.R. 143, 147 (N.D. Ill. 1993). Certainly, Gillette did not there concede anything with respect to its own contract with LMERF.

**B.      Fraudulent Inducement of Contract – Count III**

In Count III, Gillette alleges fraudulent inducement of contract on the basis that LMERF knowingly misrepresented to Gillette during the negotiation of the Supplier Agreement that it did not have the right to license the patents in suit when, in fact, LMERF had such rights by virtue of the Letter Agreement; that had Gillette known the truth, it would not have entered into the Supplier Agreement; that Gillette's reliance on LMERF's representation was justified because Gillette could not have independently discovered the truth; that LMERF's misrepresentation was made with the intention to deceive in order to deprive Gillette of a benefit, and as a result Gillette has been damaged by entering into the Supplier Agreement with the patents in suit excluded.  In support of dismissal, LMERF argues first that Gillette cannot identify a single misrepresentation (material or non-material) because the Holderman decision has determined that LMERF's statements to third parties about the patents were "perfectly accurate."[8]  Gillette responds that the Letter Agreement unequivocally establishes that LMERF had rights to license at the time it entered into the Supplier Agreement.

Under Illinois law, a party must plead the following elements to sustain an action for fraudulent inducement: (1) a false statement of material fact, (2) knowledge or belief of the falsity by the party making it, (3) an intention to induce the other party to act, (4) action by the other party in reliance on the truth of the statements, and (5) damage to the other party resulting from such

---

[8]Referring to identical language in an agreement with Warner-Lambert Corporation, the court stated, "This court has found that LMERF's representations of its rights were perfectly accurate, so that Warner-Lambert's uncertainty does not create a genuine dispute as to the effect of the "exception to the exception" clause."  165 F. Supp. 2d at 751.

reliance. *Enterprise Warehousing Solutions, Inc.* v. *Capital One Services, Inc.*, No. 01 C 7725, 2002 WL 406976, *6 (N.D. Ill., Mar. 15, 2002). Concerning "falsity" under (1), although the Holderman decision describes LMERF's representations to third parties as accurate, it does not focus on the scope of the rights granted or retained by LMERF in the Letter Agreement. Rather, the court focused on the purpose of the "exception the exception" clause, finding that it was intended to free the third parties from any threat of litigation from LMERF by immediately vesting any rights later acquired by LMERF in the third party, foreclosing Syndia's argument that LMERF could sue on rights LMERF allegedly possessed at the time the Supplier Agreement was signed. 165 F. Supp. 2d at 750. Coupled with an admission by LMERF's patent counsel "that LMERF's statement that it had no rights in the Syndia patents was a misrepresentation (because LMERF actually did have the limited rights . . . recognized in the Letter Agreement), but that LMERF would only grant the limited rights in the Syndia patents if the licensee would otherwise not agree to a license," *Id.* at 735, it might be said that the scope of LMERF's discretionary rights under the Letter Agreement were not fully determined by the Holderman decision. But it is crystal clear that the Holderman decision determined that those discretionary rights did not include any rights to license the Schedule A patents. Indeed, the background of that litigation was Syndia's claim that LMERF had thwarted Syndia's effort to pursue Gillette and Warner-Lambert either for licensing or infringement of those patents. *See id.* at 738 (Syndia at that time did not understand that it already possessed an exclusive license; the Lemelson family refused to sue Gillette and Warner-Lambert for infringement; and Syndia felt it could not pursue licensing opportunities without a formal assignment from LMERF). Even apart from the Holderman decision, the court's discussion at

Part II.A.4, at 750-51,[9] interpreting the "exception to the exception" clause under principles of contract interpretation, applies with equal force to the Letter Agreement. If the Letter Agreement were interpreted to have revested unfettered licensing rights in LMERF so as to permit it thereafter to license the Syndia patents to Gillette, the carveout of the Letter Agreement would have swallowed the Management Agreement and defeated Syndia's rights under it. For these reasons, the court concludes that the Letter Agreement does not render false LMERF's representation to Gillette that it did not have the right to license the Schedule A patents. There can be no fraud in the absence of misrepresentation. *Hartmarx Corp. v. JBA Intern., Inc.*, No. 99 C 4874, 2002 WL 406973, at *3 (N.D. Ill. Mar. 15, 2002) ("To succeed on a claim for common law fraud in the formation of a contract, [plaintiff] must show, *inter alia,* that its reliance upon [defendant's] alleged misrepresentations was justifiable. *Cozzi Iron & Metal Inc. v. U.S. Office Equip.,* Inc., 250 F.3d 570, 574; *Gallagher v. Abbott Lab*s., 269 F.3d 806, 810 (7th Cir. 2001); *Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 591 (Ill. 1996).

Further, even if it is accepted that LMERF spoke falsely when it represented that it did not have rights to license the Syndia patents, LMERF is persuasive that Gillette cannot establish that it relied to its detriment on the representation. Gillette is saying that if it had known about the Letter Agreement, it would have refused to take the license without the Schedule A patents, thus forcing Mr. Lemelson to exercise his discretion to grant a license under the Letter Agreement. A fraudulent inducement is found where a party pays consideration for something it did not buy, such as if

---

[9]"It is abundantly clear from the forgoing [*sic*] that plaintiffs' interpretation . . . violates numerous principles of contract interpretation, among them: (1) an exception cannot be read to swallow the rule . . . ; (2) every term must be given meaning, and the contract cannot be construed to render one provision meaningless; and (3) confronted with two conflicting constructions, a court must adopt the one that preserves rather than infringes another's legal rights." (Internal citations omitted).

LMERF had represented that it could license the Schedule A patents when, in fact, it could not. *See, e.g.*, *Well Care Neonatologists v. Atrak*, No. 01 C 1305, 2001 WL 717479 (N.D. Ill., June 15, 2001) (Where employee alleged that he was promised a particular position and that the employer never intended to give him that position but rather intended to place him in a different position with different responsibilities that should have commanded a higher salary, "perhaps" he stated a claim for fraudulent inducement). Gillette, by contrast, obtained exactly what it bargained for. If it had known that LMERF might have been pushed to grant a license under its Letter Agreement authority, Gillette might have bargained harder, and perhaps (though it is doubtful in light of the facts presented) it could have obtained more, but there is no rule of law that imposes a duty on an offerer to put all its cards on the negotiating table.[10]

For these reasons, the court grants LMERF's motion to dismiss Count III of the counterclaims.

## C. Additional Fraudulent Inducement by LMERF – Count IV

This claim is within Gillette's motion for leave to file a second amended counterclaim. Count IV alleges that LMERF knowingly misrepresented to Gillette during the negotiation of the Supplier Agreement that its payment thereunder from Gillette to LMERF would be the last payment of any kind that Gillette would ever have to make to LMERF, including any payment in connection with the patents in suit; that because LMERF owned 93.3% of Syndia at the time of the Supplier Agreement, LMERF actually intended to obtain further payment from Gillette by using Syndia as a "straw man" to make an infringement claim against Gillette; that Gillette relied on the

---

[10]A seller who has 30 pigs to sell may offer to sell only one to Buyer A. If Seller lies and says he has only one pig when in fact he has 30, he has not defrauded Buyer A, who pays for only one pig even though he might have endeavored to buy a dozen had he known the truth.

misrepresentation in making the payment and would not have done so if it had known that it would face an infringement claim on those patents and a potential beneficiary of that claim would be LMERF; all of which has caused damage to Gillette. LMERF strenuously objects to the filing of the second amended counterclaim on the basis of futility. *See Brunt* v. *Service Employees Intern. Union*, Nos. 01-2307, 01-2791, 2002 WL 435836, at *3 (7th Cir. Mar. 21, 2002) (Rule 15(a) provides that leave to amend a pleading shall be freely given when justice so requires. Fed. R. Civ. P. 15(a). This right, however, "is not absolute and is appropriately denied when, among other reasons, the amendment would be futile."); *General Elec. Capital Corp*. v. *Lease Resolution Corp*., 128 F.3d 1074, 1085 (7th Cir. 1997) (The opportunity to amend a complaint is futile if 'the complaint as amended, would fail to state a claim upon which relief could be granted. This standard is the same standard of legal sufficiency that applies under Rule 12(b)(6).)

Neither party has given the court case authority for its position on the particular claim asserted. Apart from whether a claim of fraudulent inducement could be built upon allegations that a licensor who stands to benefit from an agreement with the licensee (in other words, to receive compensation for having granted the license), it is plain that the proposed second amended counterclaim fails to meet the requirement of Rule 9(b) of the Federal Rules of Civil Procedure that a claim for fraud must be pled with particularity. *See Ackerman* v. *Northwestern Mut. Life Ins.*, 172 F.3d 467, 469 (7th Cir. 1999) (Rule 9(b) requires heightened pleading of fraud claims in all civil cases brought in the federal courts, whether or not the applicable state or federal law requires a higher standard of proving fraud, which sometimes it does and sometimes it does not. *See, e.g., Herman & McLean v. Huddlestom*, 459 U.S. 375, 387-89 . . . (1983)"). Here, for example, Gillette does not allege the who, what, when and where of a promise that LMERF would protect Gillette

from liability with respect to the patents in suit. If this were true, it would likely constitute a fraud, but how these facts came about in the face of the express exclusion of the Syndia patents from the Supplier Agreement is not explained by the pleading. Thus, leave to file Count IV will be denied. Inasmuch as this case is at the threshold of trial, this denial is without leave to replead. *See Brunt*, 2002 WL 435836, at *3 ("[T]he decision to grant or deny a motion to file an amended pleading is a matter purely within the sound discretion of the district court").

**D.    Breach of contract by LMERF - Count IV of Counterclaim; Count V of Second Amended Counterclaim.**

Count V alleges breach of the Supplier Agreement by LMERF based on the "exception to the exception" clause. Because the Holderman decision has already determined that LMERF did not have the right to license the Schedule A patents on or after the date of the Supplier Agreement, this claim cannot succeed based on any set of yet undetermined facts.

**E.    Unilateral Mistake Against LMERF - Count V of Counterclaim; Count VII of Second Amended Counterclaim.**

Gillette alleges that because LMERF's representation that it did not control the Schedule A patents was "fraudulent" Gillette could not have discovered the truth before signing the Supplier Agreement, its lack of knowledge was material, and enforcement of the Supplier Agreement as presently written would not adequately reflect the intent of the parties and would be unconscionable. Again, because the court in 98 C 8241 determined that LMERF had exclusively licensed the Schedule A patents to Syndia, there was no fraudulent representation. "According to the RESTATEMENT (SECOND) OF CONTRACTS § 153, a contract is voidable due to the mistake of one party when the mistake is about a basic assumption on which the party made the contract. Additionally, the mistake must have a material effect on the agreed exchange of performances, and

the mistaken party must not bear the risk of mistake. Finally, the court must determine that (1) to enforce the contract would be unconscionable, or (2) the other party has reason to know of the mistake or his fault caused the mistake." *Contempo Design, Inc.* v. *Chicago and N.E. Ill. Dist. Council of Carpenters*, 226 F.3d 535, 548 (7th Cir.2000) (internal citations omitted). When Gillette entered into the Supplier Agreement it understood that it was not obtaining a license of the Schedule A patents because LMERF did not have the right to license them. Although it may have been mistaken in its belief that it was never going to be sued for infringement of a Lemelson patent, there is no such promise in the Supplier Agreement. Gillette paid only for the benefit of the bargain it negotiated with LMERF; as already determined, LMERF was accurate in its representation that it could not license the Schedule A patents; and it is not alleged that LMERF had knowledge of Gillette's mistaken belief that it was protected from litigation stemming from the Schedule A patents. For these reasons, the claim for unilateral mistake will be dismissed.

**F.    Mutual Mistake - Count VI of Counterclaim; Count VIII of Second Amended Counterclaim**

Gillette alleges in its proposed second amended counterclaim that it was the intent of Gillette and LMERF that the 1999 Supplier Agreement would grant Gillette a license for all patents in the LMERF portfolio that LMERF had the right to license or grant covenants not to sue with respect thereto. ¶ 102. Resting again on the premise that LMERF had the right to license and grant covenants not to sue, Gillette alleges mutual mistake. "As the RESTATEMENT puts it, 'Where a writing that evidences or embodies an agreement in whole or in part fails to express the agreement because of a mistake of both parties as to the contents ... of the writing, the court may at the request of a party reform the writing to express the agreement.' RESTATEMENT (SECOND) OF CONTRACTS

sec. 155 (1981)." *N.L.R.B.* v. *Cook County School Bus, Inc.*, No. 01-2510, 2002 WL 427843 (7th

Cir., March 20, 2002). As indicated in the preceding paragraph, there was no mistake on LMERF's

part that could form the basis for a claim of mutual mistake. Indeed, LMERF contends that the

writing expresses the entire agreement between the parties. *See Manley* v. *AmBase Corp.*, 126 F.

Supp. 2d 743, 754-55 (S.D.N.Y. 2001) (a "heavy burden of proof," "equated to a clear and

convincing evidence standard," is placed on party seeking reformation of a contract negotiated by

"sophisticated business people," because "the thrust of a reformation claim is that the writing does

not set forth the actual agreement of the parties."); *Chimart Assocs.* v. *Paul*, 66 N.Y.S.2d 570, 574

(N.Y. 1986) ("The proponent of reformation must 'show in no uncertain terms, not only that

mistake or fraud exists, but exactly what was really agreed upon between the parties'"). The claim

for mutual mistake must be dismissed.

G.    **Breach of Good Faith and Fair Dealing - Count VII of Counterclaim; Count VI of Second Amended Counterclaim**

In this claim, Gillette alleges that the Supplier Agreement (governed by New York law)

contains an implied covenant of good faith and fair dealing which obligates LMERF to perform the

terms and conditions of the agreement fairly and in good faith and to refrain from any act that would

deprive Gillette of the benefit of the contract; that LMERF breached its duty by failing to provide

Gillette with a license and/or covenant not to sue with respect to the patents in suit when it had such

a right and power, and by purporting to give away such rights in the 2001 settlement agreement with

Syndia; and that Gillette has been damaged (presumably by being sued by Syndia). Gillette argues

that once LMERF signed the Supplier Agreement, it had a duty to do nothing to subvert the

agreement for the entire LMERF portfolio in which LMERF had rights.

The duty of good faith and fair dealing requires parties to conduct themselves in such a manner that one party does not subvert the intent of the contract through its actions. *M/A COM Sec. Corp.* v. *Galesi*, 904 F.2d 134, 136 (2d Cir. 1990). "The obligation of good faith cannot be used[, however,] to create independent obligations beyond those agreed upon and stated in the express language of the contract." *Wolff* v. *Rare Medium, Inc.*, 171 F. Supp. 2d 354, 359 (S.D.N.Y. 2001). Conceding that a breach of the implied duty of good faith and fair dealing may not be based on the identical conduct accused of being a breach of contract, *Loudon Plastics* v. *Brenner Tool & Die*, 74 F. Supp. 2d 182, 188 (N.D. N.Y. 1999); *Wolff*, 171 F. Supp. 2d at 359, Gillette argues that LMERF's lack of investigation prior to granting permission to Syndia to file this suit violates LMERF's duty of good faith and fair dealing. This implies that LMERF had a duty to refuse to give Syndia consent to the law suit, perhaps because Gillette acknowledges the principle that the application of the duty of good faith "is limited to instances in which a party is given discretion in enforcing certain provisions of a contract." *Chrysler Credit Corp.* v. *Marino*, 63 F.3d 574, 579 (7th Cir. 1995). These allegations do not support a claim for breach of the duty of good faith and fair dealing (a) because nothing in the Supplier Agreement explicitly creates a duty on LMERF to prevent litigation by Syndia; (b) nor can a duty be implied where it is clear that the Schedule A patents are excluded from the Supplier Agreement; and (c) the provision in the Management Agreement that allows LMERF to withhold consent has been interpreted in the Holderman decision as providing that LMERF must exercise good faith in exercising its discretion to deny permission to Syndia to sue. Gillette would have the court impose on LMERF a duty to exercise good faith towards Gillette, *i.e.*, refuse permission, while it at the same time require it to exercise good faith towards Gillette's adversary, *i.e.*, grant permission. LMERF's duty to Syndia is based on a

18

discretionary term within the Management Agreement. No such term exists in the Supplier Agreement. For these reasons, the claim for breach of the duty good faith and fair dealing will be dismissed.

**H.     LMERF'S Motion to Be Dismissed as a Party Plaintiff.**

Finally, it is time to revisit the question whether LMERF has any role to play in this law suit. As this court stated in its order of February 13, 2002, denying LMERF's motion to dismiss it from the case, "[A] party's standing to maintain a patent infringement claim is determined by that party's rights on the day the claim was filed. . . ." *Procter & Gamble Co.* v. *Paragon Trade Brands, Inc.,* 917 F. Supp. 305, 309 (D. Del. 1995). On the date this lawsuit was filed, LMERF's rights to license the patents in suit to Gillette did not exist, a determination that was made in the Holderman decision. By the same token, LMERF has given Syndia the permission it needed to pursue the litigation. There is no justiciable controversy between LMERF and Gillette concerning the Syndia patents, and LMERF is not a proper party to a declaratory judgment count. *See Super Sack Mfg. Corp.* v. *Chase Packaging Corp.,* 57 F.3d 1054, 1058 (Fed. Cir. 1995) (dismissing declaratory judgment counterclaim for noninfringement and invalidity because there was no justiciable controversy after patentee's counsel stated that patentee would not sue infringer); *Vaupel Textilmaschinen* v. *Meccanica Euro Italia,* 944 F.2d 870, 875 (Fed. Cir. 1991) (patent owner not a necessary party when only its exclusive licensee has the right to sue infringer, since the policy underlying Rule 19 in patent infringement cases is "to prevent the possibility of two suits on the same patent against a single infringer"). Under Rule 21, Fed. R. Civ. P., the court has authority to drop a party on its own initiative on such terms as are just. In this instance, justice will be served by dismissal of LMERF from this litigation.

**ORDER**

The motion of defendant-counterplaintiff Gillette for leave to file a second amended answer and counterclaims against LMERF is denied. The motion of involuntary plaintiff LMERF to dismiss the counterclaims against it is granted. Counts I, II, III, IV, V, VI and VII are dismissed insofar as they are directed at LMERF. The court on its own initiative dismisses LMERF as a party plaintiff. To preserve the record, Gillette is given leave to file its "Proposed" Second Amended Complaint and Counterclaim.

ENTER: _____
JOAN HUMPHREY LEFKOW
United States District Judge

Dated: April 9, 2002.